NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARCUS ERODICI,<br><br>                    Plaintiff,<br><br>        v.<br><br>BOARDWALK REGENCY LLC d/b/a<br>CAESARS ATLANTIC CITY, *et al.*,<br><br>                    Defendants. | Civil Action No. 23-4062 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Marcus Erodici's and Defendant Boardwalk Regency LLC d/b/a Caesars Atlantic City's Motions *in Limine*. (ECF Nos. 71, 72, 73, 74.) The parties opposed the Motions. (ECF Nos. 75, 76.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motions are **GRANTED in part** and **DENIED in part**, and Defendant's Motions are **GRANTED in part**, **DENIED in part**, and **RESERVED in part**.

**I.      BACKGROUND**

Plaintiff was a business invitee upon Defendant's premises on August 4, 2022. (ECF No. 66 at 2.)[1] Plaintiff went to Defendant's premises for a golf outing, and he attended a pre-registration cocktail reception at Defendant's pool deck. (*Id.*) Plaintiff and his group arrived at

---

[1]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

the pool deck at approximately 8:45 PM.  (*Id.*)  After approximately five minutes at the pool deck, while Plaintiff was taking a picture, Plaintiff stepped backwards and tripped on an entertainment riser that had been used for the pre-registration event.  (*Id.*)  Plaintiff had not previously seen the entertainment riser.  (*Id.*)  Plaintiff fell and injured his right shoulder.  (*Id.*)  Plaintiff sued Defendant for negligence, and on July 28, 2023, this personal injury matter was timely removed to federal court.  (ECF No. 1.)[2]  Following the denial of Defendant's Motion for Summary Judgment, (ECF No. 52), the Court entered a Pretrial Scheduling Order directing the parties to submit and brief Motions *in limine* by March 20, 2026, (ECF No. 60).  Those Motions are now before the Court.

## II.    LEGAL STANDARD

District Courts have "wide discretion in determining the admissibility of evidence under the Federal Rules."  *United States v. Abel*, 469 U.S. 45, 54 (1984).  "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990).

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017).  "Evidence should not be excluded pursuant to a motion in limine*, unless it is clearly inadmissible on all potential grounds."  *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013) (citations omitted).  "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded."  *Id.* (citations omitted).

---

[2]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

A trial court's ruling on a motion *in limine* is "subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984); *see also Faragalla v. Otundo*, 626 F. Supp. 3d 783, 785 (D.N.J. 2022) ("Because a ruling on a motion *in limine* is 'subject to changes as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." (quoting *United States v. Perez*, Crim. No. 09-1153, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011))).

## III.   **DISCUSSION**

### A.   **Plaintiff's Motions *in Limine***

Plaintiff seeks to exclude three categories of evidence.  (*See generally* ECF No. 71.)  The Court addresses each in turn.

#### 1.   *Motion to Exclude Medical Records*

Plaintiff first moves to preclude certain medical records, or statements within those records, on the grounds that they are hearsay.  (*Id.* at 5.)  Plaintiff contends that if the Court allows the statements within the medical records to be admitted, then the statements can only be introduced through the procedure outlined in Federal Rule of Evidence (Rule) 612.  (*Id.* at 7.)  Defendant argues the issue is not ripe for an *in limine* motion, and even if it were, the medical records and statements would be admissible under Rules 801(d)(2), 803(4), and 803(6).  (ECF No. 76 at 1-2.)

The Court agrees that the issue is not ripe for adjudication.  Plaintiff fails to specify which medical records he seeks to exclude, nor does he make clear whether he seeks to exclude the entire records or only the statements attributed to Plaintiff in those unspecified records.  (*See* ECF No. 71 at 5-9.)  But the Court "cannot make an all-encompassing ruling as to admissibility divorced from any actually-uttered statements that are being challenged." *Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs., Inc.*, Civ. No. 10-02513, 2013 WL 12096524, at *1 (M.D. Pa. Nov.

3

27, 2013) (denying motion *in limine* as premature when defendants "have not identified what evidence they seek to exclude"); *see also Leonard*, 981 F. Supp. 2d at 276.  Accordingly, Plaintiff's Motion is denied with respect to unspecified medical records and statements contained therein. Plaintiff may seek to exclude specific medical records, or statements within those records, at trial.

### 2.    *Motion to Exclude Prior Criminal Conviction*

Plaintiff next argues that evidence of his criminal conviction for racketeering should be precluded under Rule 609(b) because he was released from incarceration 13 years ago and the probative value of that conviction does not substantially outweigh its prejudicial effect.  (ECF No. 71 at 9-13.)  Defendant responds that Rule 609(b) does not apply because Plaintiff was released from probation less than 10 years before the anticipated commencement of trial.  (ECF No. 76 at 2.)  Defendant contends that Rule 609(a)(1) governs this issue and under that Rule, evidence of the conviction should be permitted.  (*Id.*)

Rule 609 "governs the use of convictions as evidence of truthfulness for impeachment purposes[.]" *United States v. Shannon*, 766 F.3d 346, 352 n.9 (3d Cir. 2014).  Rule 609(b) applies "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later."  Fed. R. Evid. 609(b).  And if Rule 609(b) does apply, evidence of the conviction "will be admitted *very rarely* and only in *exceptional circumstances*."  *Shannon*, 766 F.3d at 352 n.9 (3d Cir. 2014) (citing Advisory Committee Notes for Rule 609(b)) (emphasis in original)*; see also United States v. Caldwell*, 760 F.3d 267, 287 (3d Cir. 2014) ("Convictions more than ten years old are presumptively excluded[.]")  "In calculating this ten year period, the term 'release from confinement' does 'not include any period of probation or parole.'" *United States v. Butch*, 48 F. Supp. 2d 453, 465 (D.N.J. 1999) (citations omitted); *see also United States v. Wise,* 581 F. Supp. 3d 656, 658 (D.N.J. 2022) (finding the term "'release from confinement' does not include the termination of a probationary period" (citations omitted)); *United States v. Slade*, Civ.

No. 12-0367, 2013 WL 5873576, at *4 (E.D. Pa. Nov. 1, 2013) ("[T]he ten-year time period contained in Rule 609(b) does not include periods of probation." (citations omitted)).

Here, evidence of Plaintiff's conviction must be excluded under Rule 609(b). Plaintiff was released from custody 13 years ago. (ECF No. 71 at 11; ECF No. 76 at 2.) The fact that his probation ended in 2016, (ECF No. 76 at 2), has no relevance to the Rule 609(b) inquiry. *See Butch*, 48 F. Supp. 2d at 465; *Wise,* 581 F. Supp. 3d at 658*; Slade*, 2013 WL 5873576, at *4. Accordingly, because Plaintiff was "release[ed] from confinement" over 10 years ago, the Court finds Rule 609(b) applies. And because Rule 609(b) applies, evidence of the conviction can only come in if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Defendant makes no argument for why the probative value of the conviction would substantially outweigh the prejudicial effect, (ECF No. 76 at 2), and this Court finds this is not one of the "exceptional circumstances" meriting the inclusion of such evidence, S*hannon*, 766 F.3d at 352 n.9 (emphasis omitted). The Court agrees with Plaintiff that his conviction is of little probative value in this premises liability case, but it may have a prejudicial effect. (*See* ECF No. 71 at 12.) Plaintiff's Motion seeking to exclude evidence of his racketeering conviction is therefore granted.

### 3.    *Motion to Exclude References to Accidents and Injuries Unrelated to Plaintiff's Right Shoulder*

Finally, Plaintiff moves to exclude references, in medical records, to injuries pre- and post-dating the subject incident that do not concern Plaintiff's right shoulder. (*See* ECF No. 71 at 13-16.) Defendant responds that "[t]o the extent that Plaintiff is only alleging right shoulder injuries," Defendant does not intend to introduce medical evidence related to other injuries or conditions. (ECF No. 76 at 3.) Because Plaintiff has expressed no intention of alleging injury beyond to his right shoulder, the Court denies Plaintiff's Motion as moot.

5

### B.    Defendant's Motions *in Limine*

Defendant also seeks to exclude three categories of evidence.  (*See generally* ECF Nos. 72, 73, 74.)  The Court addresses each in turn.

### 1.    *Motion to Exclude Witness Statements*

First, Defendant moves to exclude the written statements by Plaintiff and his witnesses that document what they observed during the subject incident.  (ECF No. 74 at 5.)[3]  Plaintiff argues the written statements may be admissible as a recorded recollection under Rule 803(5), but such a determination can only be made at trial.  (ECF No. 75 at 7-8.)

Under Rule 803(5), a record is admissible if it (1) "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately," (2) "was made or adopted by the witness when the matter was fresh in the witness's memory," and (3) "accurately reflects the witness's knowledge."  Fed. R. Evid. 803(5).  In short, "[u]nder Rule 803(5), a recorded recollection is admitted only if the witness, after reviewing his records, is unable to testify from memory about the events recorded."  *United States v. Casoni*, 950 F.2d 893, 914 (3d Cir. 1991).  "If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."  *Id.*

Here, the Court agrees with Plaintiff.  Plaintiff's witnesses who wrote the challenged records must first be questioned at trial about the events in their statements, and "if the witness[es], after reviewing [their] records, [are] unable to testify from memory about the events recorded," then their written statements may be read into evidence.  *Casoni*, 950 F.2d at 914.  Accordingly, the Court will reserve decision on this issue.

---

[3]    Defendant also seeks to exclude the statements attributed to Defendant's employee contained within those written statements as double hearsay.  (*See* ECF No. 74 at 5.)  The Court discusses this issue separately.  *See infra* Section III.B.2.

### 2.    *Motion to Exclude Statements by Unidentified Employee*

Next, Defendant seeks to exclude statements, embedded within the witness statements, that Plaintiff and his witnesses attribute to an unidentified employee of Defendant. (*See* ECF No. 72 at 9.)    Several of Plaintiff's fact witnesses reported hearing Defendant's employee making statements at the time of  incident that are relevant for determining liability.   As part of written discovery, Plaintiff submitted that an unidentified "Event Manager" told Plaintiff: "I saw everything, this is our fault, [the riser] should have been out of here" and that employee "yelled at another employee" to remove the riser immediately. (ECF No. 72-2 at 3; ECF No. 72-3 at 4.) And during his deposition, Plaintiff testified that "[t]he manager . . . said, [']Get this thing out of here, it didn't belong there[.']" (ECF No. 72-8 at 5-6.)   Other witnesses provided similar evidence. Heather Enright, Plaintiff's fiancée and a guest at the pre-registration event, submitted a witness statement indicating that "the manager stated that the staging should have been removed immediately." (ECF No. 72-5 at 2; ECF No. 72-6 at 2.)   Thomas Catropa, a participant in the golf tournament and Plaintiff's host for the weekend, submitted a witness statement indicating that "[i]mmediately" after Plaintiff fell, "a manager came over and said ['O]h I see you tripped on the stage that should've been removed[.']"   (ECF No. 72-6 at 1.)   Ferdie Catropa, a joint host to Plaintiff along with Thomas Catropa, also submitted a witness statement indicating that "two casino hosts rushed over to help [Plaintiff] and stated . . . 'it was the casino's fault for not removing the obstruction.'" (ECF No. 72-4 at 2.)[4]   Plaintiff, Enright, and the Catropas will all be testifying at trial. (ECF No. 77-1 at 1.)

---

[4]    Gregory Natsu, a participant in the golf tournament who was in the picture Plaintiff was attempting to take when Plaintiff fell, submitted a witness statement and will be testifying at trial, but the witness does not reference any statement allegedly made by Defendant's employee. (ECF No. 72-7 at 2; ECF No. 77-1 at 1.)

During discovery, Defendant provided an Incident Report. (*See* ECF No. 75-4.) The Incident report lists the employees involved: Security Manager Daniel Williamson, Security Supervisor Richard Schurig, and Manager William Fritz. (ECF No. 75-4 at 3.) Schurig authored the Incident Report. (*Id.*) During Williamson's deposition, Williamson testified that he received a phone call—which he believed was from Fritz—notifying him of the incident and reported to the scene along with Schurig. (ECF No. 75-5 at 42-43.) Schurig also testified he received this call, but he could not recall who it was from. (ECF No. 75-7 at 7-8.) Fritz testified that while he "believe[ed]" he spoke with Plaintiff in the immediate aftermath of the fall, he could not recall whether he told Plaintiff "that the entertainment riser should not have been there" nor did he recall whether he instructed an employee to "immediately break down the entertainment riser." (ECF No. 72-10 at 3-4.) Greg Koshland, Defendant's Director of Catering and Convention Services, testified that he did not speak with Plaintiff nor did he instruct any of Defendant's employees to move the riser. (ECF No. 72-9 at 3-4.) Koshland was 60 feet away from the incident when it occurred and was informed about it by a security officer, but Koshland could not recall which officer. (*Id.* at 3.) Williamson, Schurig, Fritz, and Koshland will all be testifying at trial. (ECF No. 77-1 at 2.)

Plaintiff submits that Fritz, "[i]n all likelihood" was the manager who made the above statements, and Plaintiff will be to identify him—or whoever made the statements—at trial. (ECF No. 75 at 5.) But in any event, Plaintiff argues the statements attributed to the unidentified employee are admissible as excited utterances under Rule 803(2), statements against interest under Rule 804(b)(3), or opposing party statements under Rule 801(d)(2). (*Id.* at 1-7.)

The Court will reserve this issue for trial for two reasons. First, the Court must decide whether the underlying written submissions by Plaintiff, *see supra Section III.B.1*, are admissible

8

before it can determine whether the statements by Defendant's unidentified employee embedded within those submissions are admissible, *see Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 132 (3d Cir. 1984) ("First, we must determine whether the report is admissible; second, we consider whether the statement . . . including therein [is admissible]." (citing Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule."))).

Second, even assuming the underlying written submissions do come into evidence as a recorded recollection or Plaintiff and his witnesses recall the events underlying the submissions and testify to their contents, the Court finds it premature to decide whether the statements attributed to the unidentified employee are admissible. Under Rule 801(d)(2)(D), a statement is admissible if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship." Fed. R. Evid. 801(d)(2)(D). "[U]nidentifiability may be important in some situations," when determining whether this Rule applies, "but when the statement itself and the surrounding circumstances provide sufficient evidence of reliability, unidentifiability will not be particularly important." *United States v. Cruz*, 910 F.2d 1072, 1080 & n.10, 1081-83 (3d Cir. 1990) (affirming inclusion of unidentified co-conspirator's statement under Rule 801(d)(2)(E)). The Third Circuit has deemed statements by unidentified declarants admissible under Rule 801(d)(2)(D). *Compare Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997) (ageist statements attributed to unidentified employees in memorandum authored by defendant's chief executive officer admissible in employment discrimination matter because the statements were made by "executives [of defendant] who had authority to make personnel decisions"), *with Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1002 (3d Cir. 1988) (employee's statement that "they wanted a younger person" not admissible in employment

9

discrimination matter when no evidence indicated who "they" referred to or whether "they" were an employee of defendant acting within the scope of their employment).

Here, while the declarant is unidentified, there is likely "sufficient evidence of reliability," *Cruz*, 910 F.2d at 1080 n.10, such that Rule 801(d)(2)(D) is satisfied. For example, four witnesses provided nearly identical accounts of nearly identical statements, and all attributed those statements to employees of Defendant with managerial authority. (ECF No. 72-2 at 3; ECF No. 72-3 at 4.; 72-5 at 2; 72-6 at 1; 72-8 at 5-6.) At the same time, unlike in *Ryder*, the evidence comes from Plaintiff and his witnesses rather than Defendant itself, and the most likely source of the statements—Fritz—did not recall whether he made them. (ECF No. 72-10 at 4.) Ultimately, the Court finds that it will be better equipped to resolve this issue at trial. Indeed, Plaintiff has indicated that at trial he will be able to identify Fritz as the manager, (ECF No. 75 at 5), which could provide additional "evidence of reliability," *Cruz*, 910 F.2d at 1080 n.10, or moot the dispute altogether. And the Court will be able to hear testimony from Plaintiff and the other witnesses about the incident. If these witnesses, with consistency, testify that they witnessed Defendant's employee making the above statements and can explain why they thought the declarant was Defendant's employee acting within the scope of his employment, then the Court will likely find sufficient evidence of reliability to permit the statements. Accordingly, the Court will reserve judgment at this time.[5]

### 3.    *Motion to Exclude Right Shoulder Surgery Animation*

Finally, Defendant moves to exclude an animation of a right shoulder surgery similar to the surgery Plaintiff underwent. (ECF No. 73 at 6-8.) The 4 minute and 25 second animation was

---

[5]    In the event the Court precludes the statements under Rule 801(d)(2)(D), the Court will determine at trial whether any other exceptions apply.

prepared by medical illustrator Paula Franklin of Certified Medical Illustrators, and it includes labels and other statements made by Franklin.  (*See* ECF No. 75-10.)  Franklin will not be testifying at trial.  (ECF No. 77-1 at 1.)  However, Plaintiff has produced a statement by his medical expert, Dr. Gregory P. Charko, which indicates Dr. Charko has reviewed the animation and advises that it is "a fair and accurate depiction of Plaintiff's surgery."  (ECF No. 73-2 at 2.)  Dr. Charko will be testifying at trial.  (ECF No. 77-1 at 1.)

Defendant contends that the animation "must be precluded as unfairly prejudicial, confusing and misleading to the jury under Rule 403" because it depicts "tears and other issues that are not to scale with those allegedly sustained by Plaintiff" and "does not depict Plaintiff's shoulder or Plaintiff's specific surgery."  (ECF No. 73 at 8.)  Defendant further argues the animation should be excluded because it contains hearsay statements—writings and other labels— by Franklin.  (*Id.*)  Plaintiff responds that the animation is admissible under Rule 107, which allows a party to present illustrative aids to help the jury understand evidence.  (ECF No. 75 at 8.)  Plaintiff contends that he intends to use the animation the help the jury understand the procedure he underwent and that, contrary to Defendant's assertions, "the animation was specifically designed and tailored to match Plaintiff's actual surgery."  (*Id.* at 11.)  As for Franklin's writings in the video, Plaintiff argues these writings are not hearsay and "fairly and accurately reflect the operative report and the other physical evidence."  (*Id.*)  But, Plaintiff concedes, if the Court were to find them inadmissible, Plaintiff can "remov[e] . . . the writing" while still showing the remainder of the animation.  (*Id.* at 12.)

"The court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue

delay, or wasting time." Fed. R. Evid. 107(a). However, "[a]n illustrative aid is not evidence and must not be provided to the jury during deliberations unless" both parties consent or the Court finds good cause. Fed. R. Evid. 107(b). Information offered through this Rule—in the form of, for example, "drawings, photos, diagrams, video depictions, charts, graphs, and computer simulations"—can only be offered for the "narrow purpose of helping the trier of fact to understand what is being communicated to them by the witness or party presenting evidence or argument." (Advisory Committee Notes for Rule 107.) By contrast, the illustrative aid cannot be "offered to prove a fact in dispute[.]" (*Id.*) "[I]f the court does allow the aid to be presented at a jury trial, the adverse party may ask to have the jury instructed about the limited purpose for which the illustrative aid may be used." (*Id.*) A court may permit some features of the illustrative aid while excluding others. *See, e.g.*, *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, Civ. No. 16-4762, 2024 WL 4987018, at *8-9 (S.D.N.Y. Dec. 4, 2024) (permitting use of video under Rule 107 but excluding audio narration which was "essentially testimon[y]" of an out of court declarant).

Here, the Court will allow Plaintiff to offer the animation pursuant to Rule 107. The Court is persuaded that the illustration will aid the jury in understanding Plaintiff's medical expert's testimony about the surgery Plaintiff underwent. And to the extent there are differences between the depicted surgery and Plaintiff's actual surgery, the Court does not find the prejudice or confusion resulting from those potential differences will substantially outweigh the illustration's utility in assisting the jury. Fed. R. Evid. 107(a). Moreover, Defendant can highlight any potential differences during cross-examination of Plaintiff's medical expert. However, the Court will exclude the writings and labels on the video authored by non-testifying medical illustrator Franklin. *See Automated Mgmt. Sys.*, 2024 WL 4987018, at *8-9. Plaintiff may introduce the

12

animation, without the writings and labels, to assist juror comprehension of medical expert testimony but not to prove a fact in dispute. Defendant's Motion is therefore granted in part and denied in part.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, and other good cause shown, Plaintiff's Motions *in Limine* are **GRANTED in part** and **DENIED in part**, and Defendant's Motions *in Limine* are **GRANTED in part**, **DENIED in part**, and **RESERVED in part**.

Dated: April 2, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

13